THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* BALDOMERO CARDONA, Defendant and Appellant.

No. 8229.  Argued November 26, 1940.—Decided December 6, 1940.

*Gelpí & Gelpí* for appellant.  *George A. Malcolm, Attorney General, R. A. Gómez, Prosecuting Attorney,* and *Luis Negrón Fernández, Assistant Prosecuting Attorney,* for appellee.

MR. JUSTICE TRAVIESO delivered the opinion of the court.

The defendant-appellant was convicted and sentenced to pay a fine of $150, or to imprisonment in default thereof, for

a violation of Act No. 25 of July 17, 1935 (Session Laws, (2) p. 152), in that he "unlawfully, criminally, wilfully, and maliciously had established as owner a *boli-pool* bank and was engaged in the operation of said *boli-pool* bank, known by the name of 'La Favorita,' which is a clandestine combination, by means of the distribution and sale of tickets through agents, related to the National Lottery of Santo Domingo, which is a clandestine lottery in Puerto Rico."

We will examine the eight assignments of error on which this appeal is based in the same order in which they appear in the brief of the appellant.

1. That the lower court erred in overruling the peremptory demurrer.

The ground of said demurrer was that the complaint failed to allege that the defendant knew that the tickets and implements which were seized were "knowingly" used for the prohibited game of *boli-pool*.

The lower court acted correctly in overruling said demurrer. Section 4 of Act No. 25, *supra,* punishes "every person caught carrying or conveying any slip of paper, note, ticket, notebook, list of numbers, or implements, *knowing* that the same are used for the illegal games of *'bolita,' 'boli-pool,'* clandestine combinations related to the *pools* of the hippodromes of Puerto Rico and clandestine lotteries; and every person who buys them or any other similar ones which are proved to represent any ticket, chance, share, or interest in said illegal games or connected with the playing thereof"; and "every owner, proxy, agent, person in charge, director, or manager of the games prohibited by this Act." Section 5 of the same act punishes "every owner of a printery or photoengraving shop who *knowingly* permits or allows to be printed or engraved in his establishment, notes, tickets, slips of paper, notebooks, or any other material that may be used and distributed in the operation of the illegal games generally known as *'bolita,' 'boli-pool.'* " As may be seen, an allega-

tion that the act was done *"knowingly"* is necessary where there is involved the carrying, conveying, or printing of the tickets, but it is otherwise where the accusation is directed against the person who operates, as owner, the prohibited game, or against the person who sells the tickets. And it is natural and logical that this should be so, since it is possible that a person may carry, convey, or print notes or tickets without knowing that the same are to be used unlawfully. But it can not be presumed that a person who sells *boli-pool* tickets or who operates said games as owner, agent, or proxy does so without knowing that he is violating the law. If the prosecuting attorney were required to allege and prove that a person who sold a *boli-pool* ticket or operated said game as owner did it knowingly, this would be tantamount to admitting that ignorance of the law is a good excuse for the non-compliance therewith.

2, 3, and 4. That the lower court erred in prohibiting the witness Jusino from answering a question propounded by the defense in connection with his complicity in the crime charged against the appellant; in not holding that said Jusino, the only witness testifying against the appellant, was an accomplice or confederate; and in convicting the defendant on the sole, uncorroborated testimony of an accomplice.

The witness Jusino testified that he saw Pascual Feliciano, a boy, sell a ticket to Octavio Méndez Olivencia, that said ticket drew a prize; that the banker Baldomero Cardona, defendant herein, refused to pay said prize; that he knew that Cardona was the banker because the latter operated a bank known as "La Favorita"; that the number which the district attorney exhibited to him was the same number that the boy sold; that he knew that Baldomero Cardona was the owner of the bank "La Favorita" because the latter distributed those tickets and lived near his house, and that the witness saw him pay some *boli-pool* tickets; that he bought tickets from the defendant and bought them on many occasions.

On cross-examination the witness ratified and amplified his testimony on direct examination, stating that on several occasions he had seen Pascual Feliciano distribute notebooks for the sale of the tickets; that he bought tickets from Feliciano and from the defendant personally, from the same notebook from which the ticket sold to Octavio Méndez Olivencia had been taken. The incident giving rise to the assignments under discussion occurred thus:

"Q. Did you also sell those tickets?

"District Attorney: Do not answer that question. I object because it tends to incriminate the witness.

"Mr. Gelpí: Then I am going to ask that all of the testimony of the witness be stricken out as he stated that he purchased *boli-pool* tickets and that would also incriminate him.

"Judge: One who buys *boli-pool* tickets does not violate the law.

"Mr. Gelpí: Then we take an exception on the following grounds: That the question put to the witness is relevant, inasmuch as it tends to ascertain everything relating to the transaction as to the *bolipool* bank which is claimed to belong to the defendant, and also because the right not to be incriminated is the right of the person who takes the witness stand, which right when violated must be asserted by him before the court in order that the latter may determine said right, it not being within the power of the judge presiding over the court or of the district attorney not to permit a question because the answer given to the same by the witness might incriminate the latter.

"District Attorney: Your Honor, he is a witness for the prosecution and, therefore, the district attorney is bound to see that he is not incriminated."

As may be seen from what we have just transcribed, counsel for the defendant gave the lower court no opportunity to decide whether or not the witness should answer the question objected to by the district attorney. Without requesting and without waiting for any ruling on the question raised by the objection of the district attorney, said counsel moved that the testimony of the witness be stricken out on the ground that the latter had incriminated himself when he stated that he had bought tickets for the prohibited game of *boli-pool*. The decision complained of by the appellant

is correct. The statute punishes not the buyer, but the seller of a *boli-pool* ticket. Therefore,. the admission of the fact that he had purchased a ticket from the bank "La Favorita," did not convert the witness Jusino into an accomplice or coauthor of the crime charged against the appellant. The record fails to support the claim that the judge prohibited the witness from answering the incriminating question propounded to him by the defense.

5 and 6. That the lower court erred in not permitting the defense to cross-examine the witness Jusino and in prohibiting counsel from examining said witness as to his knowledge of the facts in the case.

Let us examine the incidents to which these assignments refer. When counsel for the defense insisted on putting to the witness a question which had already been asked and answered on two prior occasions, the following colloquy took place:

"Judge: The court understands that the witness has already answered that several times. He states that because he has seen the banker distributing tickets and paying, and so forth.

"Mr. Gelpí: And the evidence is hearsay, your Honor.

"Judge: The court thinks that we are losing an unnecessary (*sic*) time. The court does not accept that any more questions should be put to this witness.

"Mr. Gelpí: Then I am going to object that the Hon. Judge of the court does not allow me to continue the examination.

"Judge. You may continue asking questions, although counsel is a little disrespectful.

"Mr. Gelpí: In this situation we have nothing to ask the witness, and we submit the case."

The judge who presides at a trial has power and discretion to conduct the proceedings, whose only purpose is to ascertain the truth. Counsel for the defense has no right to indefinitely prolong the direct examination or the cross-examination of a witness by putting to the latter questions which have already been answered by the witness in a clear

and definite manner. In the present case the witness Jusino had repeatedly stated that he knew that Baldomero Cardona was the owner of the *boli-pool* bank because on various occasions he had seen him distributing tickets and paying those which had drawn prizes. It was when the defendant's attorney insisted on asking the same question that the judge gave him the warning which has been assigned as error. There was no such error. The judge informed counsel for the defense that he could continue examining the witness. Said counsel can not now complain of his own decision not to continue the examination.

The last two assignments relate to the admission in evidence of a *boli-pool* ticket and to the sufficiency of the evidence. The ticket was sufficiently identified by the witness Jusino as the same one which was sold by Feliciano to Méndez Olivencia. The lower court did not err in admitting it in evidence. We think that the evidence, to which the trial court gave credit, is sufficient to justify the judgment appealed from, which must be affirmed.